## SMITH *v.* McCULLOUGH.

A mortgage executed by a railroad company upon its then and thereafter to be acquired "property" contains a specific description of the different kinds of such property. *Held,* that certain municipal bonds, issued to aid in building the road, which are not embraced by such description, do not pass by the use of the general word "property."

APPEAL from the Circuit Court of the United States for the Western District of Missouri.

The case here presented is an outgrowth of a suit instituted in the court below for the foreclosure of a mortgage executed on the first day of April, 1872, to the Farmers' Loan and Trust Company, by the Burlington and Southwestern Railway Company, to secure the payment of certain bonds issued by the latter. A decree of foreclosure having passed, Elijah Smith, the receiver in that suit, filed his petition therein (to which Warren McCullough and other persons were made defendants), asserting his right, as such receiver, to certain county bonds of the par value of $40,000 (or their proceeds), constituting the last instalment of an issue of $200,000 by Sullivan County, Missouri, in payment of its subscription made in 1871 in aid of the construction of the Linneus Branch of the Burlington and Southwestern Railway. The entire issue, conformably to the contract of subscription, was originally deposited in the hands of McCullough, as trustee for the county and the railway company, with authority to deliver them in instalments of $40,000, as the work of construction progressed. By the terms of that contract the railway company was entitled to receive the last instalment when the branch road, with the iron and rolling-stock thereon, was completed and paid for by the company. Prior to Smith's appointment as receiver, all the bonds had been delivered except $40,000, which the railway company had not earned, and which, by reason of its insolvency, it had, as is now claimed, become unable to earn.

It appears that in the year 1874 sundry creditors of the railway company, in order to recover the amount of their respective claims, commenced actions against it in the courts of the State, and sued out attachments, which were served

upon McCullough, who was summoned in each action as a garnishee. The attaching creditors, in 1876, obtained final judgments for the sale of those bonds, and for the application of the proceeds to satisfy their respective judgments. In some of the cases the garnishee proceedings were brought to a conclusion the day before Smith filed his petition in the foreclosure suit asserting a claim to the bonds as against the creditors of the company. And it may be remarked as to all of those actions that he, although not made a party thereto, was informed of the proceedings by garnishment. But he did not appear in the State courts, although the order appointing him receiver authorized him "to prosecute and defend all suits, in law or in equity, in which the interests of the property or parties were involved."

The case made in his pleadings and proofs proceeds mainly upon these grounds : 1. That the mortgage of the railroad company embraced the bonds in question, and that consequently the claims of the creditors of the mortgagor were subordinate to the rights of the mortgagee. 2. That after the railway company had forfeited all right to the remaining bonds, by reason of its failure to complete the branch road within the time prescribed by the contract of subscription, he made an arrangement with the County Court of Sullivan County, whereby, in consideration of the completion by him of the branch road, he, as receiver, became entitled to the $40,000 of bonds remaining in the hands of McCullough. 3. That all the proceedings in the courts of the State under which the bonds were sold were without validity or binding force as against him.

Smith's bill was dismissed, and he thereupon appealed.

*Mr. L. T. Hatfield* for the appellant.

*Mr. John P. Butler* and *Mr. A. W. Mullins, contra.*

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

Waiving any inquiry as to whether such property as that in question could have been conveyed by mortgage in any other way than by estoppel against the mortgagor, we will consider whether the bonds issued by Sullivan County are embraced, or

were intended to be embraced, by the mortgage to the Farmers' Loan and Trust Company. That question is within a very narrow compass. It must be solved so as to give effect to the intention of the parties, to be collected as well from the words of the instrument as from the circumstances attending its execution.

The contention of the appellant is that the bonds in question are embraced by the following language, describing the premises and property conveyed: "All the present and in future to be acquired property of, or in any manner pertaining to, the Linneus Branch of the Burlington and Southwestern Railway Company, and all the right, title, and interest and equity of redemption therein, whether of said company or the stockholders in said branch or leased premises, *that is to say*, all the branch railroad, including the premises leased as aforesaid of the Lexington, Lake, and Gulf Railroad Company, now made and to be constructed, extending from the main line of said Burlington and Southwestern Railway at or near Unionville, in the county of Putnam, in the State of Missouri, by way of, &c., including the right of way therefor, road-bed, superstructure, iron, ties, chairs, splices, bolts, nuts, spikes, and all the lands and depot grounds, station-houses, depots, viaducts, bridges, timber, and materials and property, purchased or to be purchased, or otherwise acquired, for the construction and maintenance of said branch railroad, and all the engines, tenders, cars, and machinery, and all kinds of rolling-stock, now owned or hereafter purchased by said party of the first part for and on account of said branch railroad, all the revenue and income of said Linneus Branch, and all the rights, privileges, and franchises relating thereto, and property acquired by virtue thereof, now in possession or hereafter to be acquired, including machine-shops, tools, implements, and personal property used therein or along the line of said branch railroad, together with all the property of every kind acquired by said party of the first part by virtue of said lease of said Lexington, Lake, and Gulf Railroad," &c.

It is quite true, as argued by learned counsel for appellant, that the word "property" is sufficiently broad and comprehensive to include every kind of possession or right. In its literal

acceptation it might include such rights, whether legal or equitable, absolute or contingent, as the railway company acquired, under or by virtue of the subscription made by Sullivan County, to the bonds placed in the hands of McCullough. But we are all of opinion that such a construction of the mortgage is not imperatively demanded by the terms employed in describing the property mortgaged, nor would it, we think, be consistent with the intention of the parties. Had the draughtsman of the instrument stopped in his description of the mortgaged property with the general words, " all the present and in future to be acquired property of, or in any manner pertaining to, the Linneus Branch, . . . and all the right, title, and interest . . . therein," there would be more force in the position taken by the appellant. But the rules established for the interpretation of written instruments will not justify us in detaching these general words from those of an explanatory character which immediately follow in the same sentence. The subsequent phrase, " that is to say," followed by a detailed description of the different kinds of property which are embraced by the general words quoted, indicates that the mortgage was not intended to embrace every conceivable possession and right belonging to the railway company, but only the road and its adjuncts and appurtenances. It specifies different kinds of property, some of which would enter into the construction of the branch road, and some of which would necessarily be employed in its maintenance after completion. The "rights, privileges, and franchises" mortgaged were, it seems to us, only such as had direct connection with the management and operation of the road after it was constructed and put in use as a public highway. There was no purpose, we think, to pass to the mortgagee any interest whatever in municipal subscriptions which had been previously obtained and accepted by the company for the purpose of raising money to build the road. The bonds which Sullivan County placed in the hands of McCullough for delivery to the company as the work progressed were certainly more valuable, and could have been more readily utilized for purposes of construction, than a like number of bonds issued by the railway company. We ought not to presume, from the general

language used, that the railway company intended to cripple itself in the use of salable municipal securities in order to place upon the market its own bonds of less value. Our conclusion is that the mortgage was not intended to deprive the mortgagor of the privilege of using, in any way it desired, bonds or other securities to which it had an absolute or contingent right, and which it had obtained for the purpose of being used in building and equipping the road.

What has been said renders it unnecessary to consider the claim .of the appellant based upon the alleged arrangement with the county court, further than to say that his action, in that regard, was outside of his functions as receiver. Notwithstanding the broad terms of the order appointing him, we are satisfied that the court had no purpose to appoint him receiver of any property except that covered by the mortgage. He was given express authority to borrow the sum of $200,000 upon receiver's certificates of indebtedness, to be expended under the directions of the court, or of a special master, in building, completing, and equipping the unfinished portion of the Linneus Branch. But he obtained no authority from the court-appointing him to contract. for municipal aid in the construction by him, as receiver, of the unfinished portion of the branch road. His action, in that regard, was never approved or ratified by the court from which he derived his authority. He can, therefore, take nothing by his unauthorized contract with the county court.

. But there is another view, of some force, upon this branch of the case. The original contract of subscription by the county prescribes, as one of the conditions precedent to the delivery of the bonds, that the work of construction shall have been paid for. The arrangement which the receiver made with the county was, by its terms, subject to the terms and conditions of that contract. It is not, therefore, at all clear that the equities of the case are with the receiver as against the judgment creditors whose debts were for the construction of the road.

Nor, in view of the construction which we have placed upon the mortgage, is it at all essential, on this appeal, to examine into the regularity or validity, as to the receiver, of the pro-

ceedings in the State courts.   If, as we have ruled, the mort-gage did not cover the bonds in question, it is of no interest to the receiver, in this case and upon the issues made by him, to inquire whether the State courts transcended their jurisdiction by subjecting the bonds in the hands of McCullough to the satisfaction of the judgment creditors of the railway company.

In one of the printed briefs before us some argument is made to show that the county of Sullivan has been injuriously affected by the decree below, but inasmuch as the county has not appealed therefrom, we need not consider any suggestion made in its behalf.

*Decree affirmed.*