OLD COLONY TRUST CO. v. CITY OF TACOMA.

(District Court, W. D. Washington, S. D. January 20, 1915.)

No. 18.

1. STREET RAILROADS ⬥54—MORTGAGES—AFTER-ACQUIRED PROPERTY.

Where a street railroad mortgage by its terms was to cover all the company's property, both real and personal, and "now and hereafter acquired," together with all franchises, rights, and privileges granted by the city and any and all franchises, rights, and privileges which might be granted thereafter, etc., it covered a subsequent franchise authorizing the railroad company to sell electricity for power as against the city.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 133; Dec. Dig. ⬥54.]

2. COURTS ⬥366—FEDERAL COURTS—STATE STATUTES—CONSTRUCTION.

Construction of state statutes by the highest appellate court of the state is binding on the federal courts sitting in such state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. ⬥366.]

3. COURTS ⬥365—FEDERAL COURTS—JURISDICTION—QUESTIONS INVOLVING PROPERTY—DETERMINATION—COMITY.

Where federal jurisdiction depends on diversity of citizenship alone and no constitutional question is involved, a federal court, in the absence of controlling authority, will determine a question touching particular property in the same way as it has been determined by the courts of the state, unless the federal court is fully convinced that the decision of the state court is erroneous.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 950, 952, 955, 969–971; Dec. Dig. ⬥365.]

4. STREET RAILROADS ⬥61—FRANCHISE—CONSTRUCTION—FORFEITURE—"PERFORM."

A provision of a street railroad company's franchise that failure of the grantee, its successors or assigns, to perform any and all conditions in the ordinance specified and mentioned for a period of 30 days after notice shall be ground for forfeiture, etc., was not limited to affirmative duties imposed on the grantee, because injunctive relief would afford an adequate remedy so far as things forbidden were concerned but included both; the word "perform," in the connection in which it was used, being ample to express inaction as well as action.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 50–54; Dec. Dig. ⬥61.

For other definitions, see Words and Phrases, First and Second Series, Perform.]

5. STREET RAILROADS ⬥61—FRANCHISE—FORFEITURE—EVIDENCE.

Notice of forfeiture of a street railroad company's power franchises having been served by a city because of the company's failure to desist in furnishing electricity for power purposes, evidence *held* insufficient to warrant a finding that a railroad company's officers were wrongfully or intentionally misled by the officers of the city, or that the latter's acts

and statements warranted the company in assuming that the resolution declaring forfeiture would be disregarded.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 50–54; Dec. Dig. ☞61.]

Suit by the Old Colony Trust Company, as trustee, etc., against the City of Tacoma. Complaint dismissed.

James B. Howe, of Seattle, Wash., and John A. Shackleford, of Tacoma, Wash., for complainant.

T. L. Stiles and Frank M. Carnahan, both of Tacoma, Wash., for defendant.

CUSHMAN, District Judge. Suit is brought by complainant, mortgagee of the property of the Tacoma Railway & Power Company, asking that the defendant city be enjoined from taking any steps to forfeit a franchise granted the mortgagor for electric power purposes by a certain city ordinance and from asserting title to, or attempting to control, the electric appliances constructed thereunder.

Suit was brought to enjoin the forfeiture of this franchise in the state court by the mortgagor, in which suit the city secured a decree forfeiting the franchise and property used under it. The complainant in the present suit was not a party to such litigation, and there is no evidence that it had notice thereof. Upon appeal, the Supreme Court of the state of Washington affirmed that decree. Tacoma Ry. & P. Co. v. City of Tacoma, 79 Wash. 508, 140 Pac. 565.

This court in a suit by the grantee of the Tacoma Railway & Power Company, under a transfer made after the rendition of the opinion in the foregoing case by the Supreme Court, but before entry in the trial court of the remittitur, refused an injunction, forbidding the city interfering with the property installed under the franchise, forfeited to the city by the ruling of the state court. P. S. T., L. & P. Co. v. City of Tacoma (D. C.) 217 Fed. 265.

This court has already held in the present suit, upon the authority of Old Colony Trust Co. v. Omaha, 230 U. S. 100, 33 Sup. Ct. 967, 57 L. Ed. 1410, that complainant was not, necessarily, concluded by the decree in the state court against its mortgagor, the Tacoma Railway & Power Company, to which suit it was not a party.

[1] Upon the consolidation of certain street railway companies, the mortgage in question was given, in 1899, to the complainant herein. The power franchise in question was not granted until 1905, some six years after the giving of the mortgage.

While it appears in the mortgage that the company was mainly engaged in a street railway business, it must be assumed that the articles of incorporation of the Tacoma Railway & Power Company authorized it to engage in the power business, else the franchise would not have been granted. The name of the company also indicates that it was to engage in the power, as well as street railway, business.

The mortgage covers much property. By its terms, it was to cover "all this company's property, both personal and real and both now and hereafter acquired." After this general language, a large amount

of property is described in detail, including franchises, under many particular ordinances. After which occurs the following language:

"Also any and all other franchises, rights and privileges hitherto granted by said city of Tacoma * * * to any person or corporation whatever, formerly owned by said Tacoma Railway & Motor Company (one of the consolidated companies), * * * also any and all other franchises, rights and privileges which may be granted hereafter, by said city of Tacoma, * * * either to the original grantee or grantees named in either of the aforesaid ordinances (whether those hereinabove specifically mentioned or any other hereinafter referred to only in general terms), or to said Tacoma Railway & Motor Company as the successor in interest of such original grantee or grantees, in and by any ordinance or ordinances amending, enlarging, extending or otherwise modifying either or any of said existing ordinances."

Upon the part of the city it is contended that the description of the "after-acquired property" in the mortgage is not sufficient to cover the franchise and property now in question, and that therefore the complainant has no interest sufficient to support its suit.

The foregoing shows an intention to mortgage "after-acquired" franchises both particularly and generally, and nothing appears in the situation, circumstances, or language of the mortgage showing any intent to include only franchises for the operation of street cars.

The following cases have been called to the court's attention: Guaranty Trust Co. v. Atl., etc., R. Co. (C. C.) 132 Fed. 68; Beall v. White, 94 U. S. 382, 24 L. Ed. 173; Smith v. McCullough, 104 U. S. 25, 26 L. Ed. 637; Parker v. New Orleans, etc., R. Co. (C. C.) 33 Fed. 693; T. R. & P. Co. v. Tacoma, 79 Wash. 508, 140 Pac. 565; Farmers', etc., Co. v. Commercial Bank, 11 Wis. 207; Dinsmore v. Racine, etc., R. Co., 12 Wis. 649; Farmers', etc., Co. v. Cary, 13 Wis. 110; Farmers', etc., Co. v. Commercial Bank, 15 Wis. 424, 82 Am. Dec. 689; Aldridge v. Pardee, 24 Tex. Civ. App. 254, 60 S. W. 789; Brainerd v. Peck, 34 Vt. 496; Meyer v. Johnston, 53 Ala. 237, 331. The foregoing cases are all clearly distinguishable from the present case.

Whether such language as that used in the mortgage in the present case would suffice as against an innocent purchaser from the mortgagor for value, it is not necessary to determine. In the present case the mortgagor and mortgagee have treated and recognized the mortgage as covering this franchise and the property used under it. As the city could not object to a mortgage being placed upon the franchise after it was granted, it is clear that it is not in a position to question the existence of the lien of the mortgage where the language, at most, is uncertain and ambiguous and the parties to the mortgage have given to it a construction extending the lien over the property in question.

A mortgage of after-acquired property can only attach to such property in the condition in which it comes into the mortgagor's hands. Jones on Corporate Bonds and Mortgages, § 114.

The following recitals from the decision of the state court show the main questions in controversy, consideration of which is asked herein:

"The respondent, the city of Tacoma, is a city of the first class, and since 1893 has owned and operated a municipal lighting plant. In 1912, it quali-

fied itself to take over the entire lighting business of the city. The appellant owns and operates a street railway system in the city of Tacoma. In 1890, the Legislature passed an act (Laws 1890, p. 131) classifying cities, and empowering cities of the first class to frame their own charters. It also empowered them (Rem. & Bal. Code § 7507, subd. 7 (P. C. 77, § 83): 'To lay out, establish, open, * * * or otherwise improve streets, alleys, avenues, * * * and to regulate and control the use thereof, and to vacate the same, and to authorize or prohibit the use of electricity at, in, or upon any of said streets, or for other purposes, and to prescribe the terms and conditions upon which the same may be so used, and to regulate the use thereof.'

"In pursuance of this power, the respondent framed an independent charter, and amended the charter in 1896, prohibiting the legislative power of the city from granting to any person or corporation a franchise, privilege, or right 'to sell or supply water or electric lights within the city of Tacoma to the city or any of its inhabitants,' as long as the city owns a plant or plants for that purpose and is engaged in the public duty of supplying water or light, subject to the exception that the city might grant a franchise to supply water or electric light to any part of the city not supplied or furnished by the city plant, 'to cease and determine at such time as the city of Tacoma shall furnish and provide water and light in said section or part of the city.' This amendment was carried into the charter of 1909.

"In harmony with the charter, the city council, in 1905, adopted an ordinance granting to the appellant, its successors and assigns, for a period of 25 years, 'the right, privilege, authority, and franchise,' to erect and maintain poles, lines, and conduits and to stretch wires thereon along, across, and underneath the streets and alleys of the city for the purpose of transmitting, distributing, and selling electric current, to be furnished and used for the purpose of furnishing 'power and heat, or either of them,' for power and heating purposes, and 'for lighting street cars,' and providing that it should not 'furnish power to be used for lighting or generating electricity for lighting.' It was provided that the stipulations in the ordinance should not prevent the city from granting the appellant 'by special permit' the right to furnish electric current 'for lighting purposes,' subject to the provisions of the city charter and the laws of the state; 'such permit, however, to be revocable at any time at the option of the city.' The ordinance further provided: 'Sec. 11. That each and every right, privilege and authority and franchise by this ordinance granted shall, without the passage of any resolution, ordinance or any action of any kind whatsoever on the part of the city of Tacoma, be null and void and absolutely of no effect, upon the failure of said grantee, its successors or assigns, to perform any and all of the conditions in this ordinance specified and mentioned, for a period of thirty days after notice shall have been served upon said grantee, its successors and assigns, by the commissioner of public works of said city, under the directions and authority of the city council of said city to the effect that said city will, if said failure is not corrected before the expiration of thirty days from the serving of said notice, consider this franchise null and void and absolutely of no effect because of the failure of said grantee, its successors or assigns, to perform any and all of the conditions in this ordinance specified; and in the event of the forfeiture of the franchise hereby granted, on account of the breach of any of the conditions herein, the said grantee, its successors and assigns, shall also forfeit and surrender to the city of Tacoma, all poles, lines, wires, or other property that may be locatel or constructed in pursuance hereof, within the city of Tacoma, unless the same are removed within sixty days thereafter and said streets, alleys and public places from which they are removed put in good condition, and the same shall thereupon become and be the property of said city of Tacoma.' Ordinance No. 2,295.

"Another section of the ordinance provided that the grant was subject to the right of the city at any time, on 30 days' notice to the grantee, to repeal, change, or modify the grant, if the franchise granted was not exercised in accordance with the provisions of the ordinance; 'and the city council reserves the right so to do, and this section shall be considered as a cumulative and additional remedy to that provided by section 11 of this ordinance.'

Another section of the ordinance, in express terms, reserved to the city the right to maintain and operate an electric light, heat, and power plant. The appellant filed an acceptance of the ordinance, as follows: 'And the said Tacoma Railway & Power Company, by its manager and upon due authority of its board of directors, agrees to be bound by the conditions, limitations, and obligations set forth and contained in said ordinance.'

"In December, 1908, the appellant entered into a contract with the Northern Pacific Railway Company, wherein it obligated itself to furnish to that company, at its depot in the city and at its shops in South Tacoma, all the electric power that it uses 'for power purposes and for lighting purposes, for a period of ten years from the date of said contract.' On the 2d day of April, 1913, the city then being qualified to take over all the lighting business within its boundaries, passed a resolution revoking the permit which it had theretofore granted to the appellant to furnish electric current for lighting purposes, and providing that, from and after April 15th following, it should cease to furnish any current for that purpose. On April 21st following, the council passed a resolution, reciting that the appellant was then supplying electric current to be used directly and indirectly for lighting purposes. The resolution directed the commissioner of public works to notify the appellant that, in case of failure to comply with the terms and conditions of the ordinance before the expiration of 30 days after service of the notice, the city would consider the franchise granted by the ordinance null and void, and would claim a forfeiture of all poles, wires, lines, and other property located or constructed in pursuance of the ordinance, unless the same should be removed within 60 days as specified in section 11, and that the council would repeal the ordinance. The notice was served on April 23d. The appellant declined to comply with the notice, and on the 22d day of May commenced this action, praying that the appellant be enjoined from repealing the ordinance or declaring the same null and void, and praying that it be enjoined from asserting a forfeiture. The city answered, setting forth the matters and things to which we have adverted, and praying that the appellant be enjoined from furnishing electric power in the city, to be used directly or indirectly for lighting purposes; and that the ordinance to which reference has been made, 'and every right, privilege, authority, and franchise granted thereby,' be forfeited and declared to be null and void.

"It was adjudged that all the powers granted by the ordinance had been forfeited by the appellant in continuing to furnish the Northern Pacific Railway Company with power for lighting; that the ordinance should be null and void and of no further effect; that the appellant should be no longer entitled to exercise any privileges under it 'except to remove its poles, lines, wires, and other property from the streets of said city'; that the appellant be enjoined from maintaining poles, lines, or stretching or maintaining wires thereon, in, over, upon, or across the streets or alleys of the city, and from transmitting electric current over said lines or wires for the purpose of furnishing 'power or heat,' or for any other purpose arising out of, or dependent upon, such ordinance. It was further adjudged that, unless the appellant shall 'within sixty days after the entry of this decree, remove its poles, wires, and other property from the streets, alleys and public places of the city, the same shall be thereupon forfeited to and be the property of the city of Tacoma.'

"The appeal presents four principal questions: (1) Was the condition in the ordinance that the appellant should not furnish electricity for lighting purposes a valid one; that is, did the city have the power to so limit the franchise? (2) If so, was the limitation abrogated by the public service commission law (Laws 1911, p. 543)? (3) Did the refusal of the appellant to discontinue furnishing power to the Northern Pacific Railway Company for lighting purposes warrant the court in adjudging a forfeiture? And (4) did the court commit error in excluding certain testimony? These questions will be treated in the order stated." 79 Wash. at pp. 510–514, 140 Pac. 565–567.

[2] The first two of the four questions mentioned depend upon the construction of state statutes, and the construction given to them by

the state court is binding upon this court. Upon the third question the state court held that the equitable maxim that equity abhors a forfeiture means that, ordinarily, property will not be declared forfeited where the franchise, or contract, leaves a discretion in the court, and that such maxim and rule has no application in a case such as the present, where the letter of the franchise, itself, makes express provision for such forfeiture.

[3] Where the jurisdiction depends on diversity of citizenship, alone, and no constitutional question is involved, as in this case, in the absence of authority controlling on this court, where the decision of the state court touches the same property, in consideration of the results should the decisions be conflicting, while not absolutely bound by the ruling of the state court, more than ordinary weight must be given it and its finding followed, unless the court is fully convinced that it is erroneous. In view of the reasoning of the state court and the analysis made by it of the decisions on this question, its ruling is approved and followed.

The ordinance in question contains the following provisions:

"Section 1. That there be and is hereby granted to the Tacoma Railway & Power Company, a corporation organized and existing under and by virtue of the laws of the State of New Jersey, its successors and assigns, for a period of twenty-five (25) years, the right, privilege, authority and franchise to erect and maintain pole lines and underground conduits and to stretch wires thereon and therein, over, along, across and also underneath the streets and alleys of the city of Tacoma in the manner hereinafter provided, for the purpose of transmitting, distributing and selling electric current to be furnished and used for the purpose of furnishing power and heat, or either of them, and the further right to charge for such current a reasonable compensation and for any other use or uses to which electricity may be put, except as hereinafter provided; provided that neither said Tacoma Railway & Power Company, nor its successors or assigns, shall have any right to supply electric current to be used directly or indirectly for lighting purposes, or to run motors, dynamos or other machines by which electric current shall be generated for lighting purposes, to any person, firm, association or corporation, except, where the grantee herein, its successors and assigns, may furnish current for street railway purposes, then and in that event current may be sold for lighting street cars, but for no other lighting purpose whatever. It is the intention of this section to grant to the Tacoma Railway & Power Company, its successors and assigns, the right to sell power for power and heating purposes, and for lighting street cars; but in no event, except as hereinafter provided, shall the said grantee, its successors or assigns furnish power to be used for lighting or generating electricity for lighting; provided further, however, that nothing in this section contained shall prevent said city from granting the said Tacoma Railway & Power Company, its successors and assigns, by special permit, the right to furnish any person, firm or corporation within said city or said city, electric current for lighting purposes, subject to the provisions of the city charter and the laws of the state of Washington; such permit, however, to be revocable at any time at the option of the city. * * *

"Sec. 11. That each and every right, privilege, and authority and franchise by this ordinance granted shall without the passage of any resolution, ordinance or any action of any kind whatsoever on the part of the city of Tacoma, be null and void and absolutely of no effect, upon the failure of said grantee, its successors or assigns, to perform any and all of the conditions in this ordinance specified and mentioned, for a period of thirty days after notice shall have been served upon said grantee, its successors and assigns, by the commissioner of public works of said city, under the directions and authority of the city council of said city to the effect that said city will, if said failure

is not corrected before the expiration of thirty days from the service of said notice, consider this franchise null and void and absolutely of no effect because of the failure of said grantee, its successors and assigns, to perform any or all of the conditions in this ordinance specified; and in the event of the forfeiture of the franchise hereby granted, on account of the breach of any of the conditions herein, the said grantee, its successors and assigns, shall also forfeit and surrender to the city of Tacoma, all poles, lines, wires or other property that may be located or constructed in pursuance hereof, within the city of Tacoma, unless the same are removed within sixty days thereafter and said streets, alleys and public places from which they are removed, put in good condition, and the same shall thereupon become and be the property of said city of Tacoma.    *   *   *

"Sec. 17. This grant is subject to the right of the city council at any time, on thirty days' written notice to said grantee, its successors and assigns, by the commissioner of public works, authorized so to do, hereafter to repeal, change or modify this grant, if the franchise granted hereby is not operated in accordance with the provisions of this ordinance or at all, and the city council reserves the right so to do and this section shall be considered as a cumulative and an additional remedy to that provided by section 11 of this ordinance."

[4] Other sections of this ordinance impose upon the grantee of the franchise many affirmative obligations. The only ground of forfeiture authorized is that set forth in paragraph 11:

"The failure of said grantee, its successors or assigns, to perform any and all conditions in this ordinance specified and mentioned for a period of thirty days after notice."

It is now contended that this language contemplates only the failure to perform those affirmative duties imposed upon the grantee of the franchise by the terms of the ordinance; that, so far as those things forbidden to be done by the grantee are concerned—as was the right to furnish electricity for lighting purposes—it was not intended that a forfeiture might be enforced, for such a violation; that injunctive relief in such a matter would afford an ample remedy.

It may be conceded that such relief would be more appropriate and more nearly complete to prevent the grantee's doing acts forbidden to it in the franchise, than to compel the performance of those acts undertaken by it; but the language used shows no intent to limit the right of forfeiture as contended. One of the conditions of the franchise was that the grantee should, in no event, without a permit from the city, furnish electric power for lighting. True, the word "perform," considered by itself, is more appropriate to express action than inaction; but, when considered in the connection in which it was used—"perform any and all conditions of the ordinance specified and mentioned" —it is clear that it contemplates both the doing and the not doing of those things required. In such connection it means the carrying out, or the fulfilling, of all conditions of the ordinance.

Thirty days were allowed the Tacoma Railway & Power Company, under the resolution of the city council, within which to comply with its requirements and avoid a forfeiture. During this 30 days, there is evidence of various conversations between the officers of the Tacoma Railway & Power Company and the executive officers of the city and certain correspondence between officers of the company in charge of the matter. Evidence of such conversations was, by the state Supreme

Court, held inadmissible; it appearing to that court that they had occurred before the passage of the resolution of April 21st. The evidence in the present case is that a number of these conversations were after the passage of the resolution. This evidence, doubtless, shows that the officers of the Tacoma Railway & Power Company were not acting in hostile defiance of the requirements of the resolution.

This evidence, also, shows that the city was not prepared at this time to immediately take care of all of the needs of the Northern Pacific Railway Company, being supplied by the Tacoma Railway & Power Company under its contract with that company. It further shows that the officers of the Tacoma Railway & Power Company were acting under the belief that the city's officers, on account of the foregoing fact, would not insist upon a forfeiture pending an adjudication in court of the questions that had arisen between the Tacoma Railway & Power Company and the city, even though the former did continue to furnish electric power, under its contract, to the Northern Pacific Railway Company, of too high a voltage for light, but which was, by the Northern Pacific Railway Company transformed on its own premises to a lower voltage and used for lighting purposes.

These officers of the Tacoma Railway & Power Company acted in the evident belief that the resolution of April 21st was to be treated as a threat of forfeiture, only as a step deemed—as they understood—by both the officers of the Tacoma Railway & Power Company and the city, to be necessary in order to bring the matter into court for adjudication, and made without any real purpose upon the part of the city, or its officers, to actually forfeit the franchise in pursuance of the resolution in case the company failed to comply with the requirements of the resolution within the 30 days therein provided.

[5] This is as far as the preponderance of the evidence goes. It fails to establish, by the clear and convincing proof necessary, that the officers of the city wrongfully or intentionally misled the officers of the Tacoma Railway & Power Company in this regard. Nor is there a clear preponderance showing acts or statements by the officers of the city of such a nature as to warrant the officers of the defendant company in assuming that the resolution declaring a forfeiture, under the terms therein specified, would be disregarded.

This conclusion renders it unnecessary to consider what, if any, effect representations, or concessions on the part of the executive officers of the city, or officers acting in their executive capacity, would have towards modifying such a resolution of the city council.

Particular significance is not to be attached to the fact that the Tacoma Railway & Power Company had contracted with the Northern Pacific Railway Company, for the period of ten years, to furnish the latter company with electric power for lighting purposes, as showing a willingness to violate the provisions of its franchise, for, at the time of making this contract, the former company had a permit from the city for this purpose. Though this permit was revocable at any time, the Tacoma Railway & Power Company had no notice that its revocation was definitely contemplated, and, in its contract with the Northern Pacific Railway Company, provision was made for the eventuality of the revocation by the city of this permission.

After the city answered in the state court and by cross-complaint prayed the forfeiture of the franchise, and pending the trial of that cause, the city and Tacoma Railway & Power Company entered into an agreement, by the terms of which the latter was to continue supplying the Northern Pacific Railway Company electric current for lighting purposes, but it was stipulated that the forfeiture claimed by the city on account of the acts complained of in the cross-complaint should be unaffected by this subsequent agreement. While this tends to show the city unprepared to handle the needs of the Northern Pacific Railway Company at the time of the claimed forfeiture, it is not sufficient to deprive the city of its right of forfeiture provided for in the franchise.

The prayer of the complaint is denied.