THE NEW WATERFORD BANK *v.* GOODWIN ET AL.; WOLF ET AL., APPELLEES; LATANZIO, RECR., ET AL., APPELLANTS.*

(No. 809—Decided October 25, 1961.)

*Messrs. Fetch & Kendall,* for defendant-appellees.
*Mr. Frank M. Springer,* for appellants.

BROWN, P. J. In May of 1953 the New Waterford Bank, holder of a mortgage on certain chattels useful in connection with coal mining operations, filed a petition to foreclose its mortgage. The petition describes the chattels, alleges breach of

---

*Motion to certify the record overruled (37419), April 25, 1962.

condition of the mortgage and judgment on the note incidental thereto, and the prayer is that the rights of plaintiff and other defendants claiming an interest in the chattels be determined and that the plaintiff's mortgage be foreclosed, the property sold and the proceeds applied to satisfy liens of the parties.

At the time the petition was filed the chattels were located in a mine owned by the brothers Wolfe, who are named as defendants only because they are alleged to claim some interest in the chattels.

Thereafter, on May 12, 1953, plaintiff filed a motion for the appointment of one Constantino Latanzio "as receiver of the property and interest of the [mortgagor] Meek Coal Company." Plaintiff claimed that the property was in danger of destruction by flood damage, since it was in a mine filling with water and not being pumped.

The Court of Common Pleas appointed the receiver and ordered him to "pump said mine and take custody of said chattels, sell all property not specifically excepted, and store excepted property in a safe place."

Among the chattels described were coal digging and loading equipment and pumps.

The receiver, by original entry dated May 23, 1953, was given a period of 60 days to carry out his duties.

On May 29, 1953, the receiver's bond and liability policy were approved by the trial court.

On March 3, 1954, a decree was issued determining the rights of parties to the chattels and proceeds of sale.

On July 20, 1956, the receiver filed his report, and noted therein a claim against the receiver by the Wolfe brothers, owners of the mine, dated June 22, 1956, in the amount of $5,530. The report stated that this claim was rejected by the receiver on July 17, 1956.

The Wolfe brothers took exception to this report denying their claim, and the same was heard on July 2, 1958, whereupon counsel for the exceptors was given leave to file an intervening petition against the receiver and his bondsman, American Surety Company, for the flood damage to real estate and to chattels *not* described in the petition or any order of the court.

In September 1958 the intervening petition was filed, claiming that the receiver was appointed on May 20, 1953, and that

he had permitted the mine to flood causing damage to real and personal property of the intervenors in the amount of $6,995, plus interest. $2,215 was claimed to be the damage to the realty. The lose to personalty by such damage computes at $4,780.

The receiver and bonding company claim that the flooding occurred between the date of the appointment, May 29, 1953, and a date which was the earliest practicable date when the receiver could qualify and place himself in a position of being able to take over the pumping of the mine, to wit, about June 22, 1953; and claim further that the intervenors turned off pumps and electricity on May 29th, permitting the mine to flood when they knew this act made it impossible for the receiver to protect the mine and equipment.

A jury was waived and the case was tried to the court, who decided for the intervenors and assessed their damages at $4,280, rendering judgment against the receiver and his bonding company in that amount. The trial court found damage to chattels of the Wolfes in the value of $3,530 and damage to real estate of the Wolfes of $750.

The evidence does not appear to be in dispute that the chattels damaged were not the chattels described in the petition of foreclosure.

It must be noted that the original action did not involve a general receivership of the business, formerly known as the Meek Coal Company. It was a simple foreclosure of a chattel mortgage, in connection with which an order authorizing and directing the receiver to take possession of the chattel property described in the petition of the original action was properly made.

The trial court did not by journal exclude the owners of the mine and other chattel property located therein from the mine, nor did the court place the receiver in charge of possession of property not described in the petition, and hence not in custodia legis. The court would not have jurisdiction so to do, since a receivership in a foreclosure suit is limited and special. 4 Clark, Law of Receivers, 1703, Section 936.

It would be improper for the court to appoint a receiver of any property except that embraced in the petition filed in the case upon which the receivership is predicated. 1 Clark, Law of Receivers, 454, Section 287.

A receiver in a foreclosure action is not a receiver of any property except that covered by the mortgage. 45 American Jurisprudence, 122, Section 145, citing *Smith* v. *McCullough*, 104 U. S., 25. See, also, 2 Clark, Law of Receivers, 1059, Section 637.1.

A receiver cannot ordinarily be charged with failure properly to care for property not coming under the control of the appointing court. 2 Clark, Law of Receivers, 650, citing *Campbell* v. *Hargraves*, 181 Ark., 492, 26 S. W. (2d), 876.

The intervening petition of the Wolfes, filed by leave of court, claims that the receiver "took over the coal mine" of these defendants (Wolfe) and neglected to pump the mine causing damage to the real and to chattel property.

Evidence discloses that the intervenors' complaint was that the receiver failed to take over the mine and failed to pump the mine. Had the receiver done some act to the mine or to any property of the Wolfes which was not properly *in custodia legis* his position as a receiver would not excuse him and he would be subject to suit.

"The personal liability of the receiver for wrongfully taking property not embraced in the order of appointment or forcibly taking property from a stranger to the receivership proceedings may be enforced by the rightful owner of the property in any appropriate form of action, such as [actions sounding in] trespass * * * conversion, or replevin * * *." 75 Corpus Juris Secundum, 1004, Section 330.

Before the Wolfes can collect from the receiver for his negligence they must show a duty in him to preserve their mine and their chattels by pumping the mine and his failure so to do. The only duty this receiver had was to preserve the property which was the subject of the litigation. There is no evidence that the damage claimed by the Wolfes was to such property. All evidence is that this damage claimed was to other property not covered by the order appointing the receiver and not described in the petition.

The case is before us, without objection by the appellee, as an appeal on questions of law and fact.

Judgment is, therefore, rendered against the intervening petitioners, Emmett R. Wolfe and James T. Wolfe, and in favor of the defendants-appellants, American Surety Company and

Constantino Latanzio, and the intervening petition is dismissed at appellee's costs.

*Judgment accordingly.*

DONAHUE and GRIFFITH, JJ., concur.